IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DE'AUNDRIA LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-1605-D |
| | § | |
| IBM CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff De'Aundria Lee ("Lee") sues defendant IBM Corporation ("IBM"), alleging that she was demoted based on her sex and pregnancy, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* (West 2023). IBM moves for summary judgment. For the reasons that follow, the court grants the motion.

I

Lee, who is female, was employed by IBM.[1] She began working as a Senior Client Relationship Representative in June 2017. In April 2020 Lee became a Partner Sales Manager, reporting to Randy Long ("Long"). In July 2022 Lee began supporting an IBM partner called CDW. In the same month, Matt Krull ("Krull") became her first-line manager.

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to Lee as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Nick Lisle ("Lisle") was Lee's second-line manager, and Jennifer Kady ("Kady") was her third-line manager.

In January 2023 Lee learned that she was pregnant with her second child. In March 2023 Lee first informed Long, who was no longer her manager but still a leader within IBM security. According to Lee, she later informed Krull, Lisle, her teammates, CDW, and Human Resources ("HR")[2] of her pregnancy, but could not recall when these communications occurred. In the summer of 2023 Lee completed paperwork concerning a leave of absence due to her pregnancy. Lee began her second maternity leave in September 2023.

IBM contends that, as early as June 2023, it had been decided that a "redeployment" (a reallocation of personnel) was needed. According to IBM, Kady selected Lee and nine other individuals for redeployment on June 16, 2023.[3] One other employee who reported to Krull, and at least two others within the Security ecosystem, were also selected for redeployment. IBM maintains, however, that these selections were only a fraction of the overall redeployment initiative, with 104 employees having been selected for redeployment companywide.

IBM contends that the redeployment was "due to [the] business needs of individual

---

[2]Lee testified that the communications to HR occurred in an online chat, but she could not determine whom the conversation was with.

[3]Lee disputes that Kady was the ultimate decision-maker, testifying that Kady would not be "involved in . . . day-to-day personnel matters." D. App. (ECF No. 22) at 37.

departments within IBM," and because the Security ecosystem (Lee's department at the time) had experienced "declining revenues." D. Br. (ECF No. 21) at 7-8. Krull testified that "head count was being eliminated from [his] team" due, "[i]n retrospect . . . [to] declining revenue within the IBM Security brand." D. App. (ECF No. 22) at 81. Similarly, Lisle testified that the redeployment was necessary because "certain areas of the business needed skills, specific skills" and that IBM needed to consolidate. *Id.* at 92. According to Lisle, the Security ecosystem team would "do the same [work] but with less individuals," with the existing work being "spread across the individuals that were remaining on the team." *Id.* at 96.

Lee was selected to move into Digital Sales, as a Digital Sales Specialist, at a division of IBM known as Red Hat. IBM notified Lee of her redeployment in January 2024, shortly before the end of her leave. She began working in the Red Hat role in April 2024. The parties contest the nature of the redeployment: Lee characterizes the move as a demotion, and IBM describes the redeployment as a lateral transfer. Following Lee's redeployment, Krull temporally covered the CDW account. Eventually, Remsen Meyer ("Meyer"), a male and existing member of the Security ecoystem, began assisting with the CDW account in December 2023. He then began exclusively covering the CDW account in January 2024.

On March 18, 2024 Lee filed a charge of discrimination against IBM, asserting that she had been subjected to discrimination and retaliation because of her sex and pregnancy. On June 16, 2025 Lee informed IBM of her resignation, leaving the company on June 30, 2025. Lee then filed the instant suit against IBM under both Title VII and the TCHRA, asserting claims of discriminatory demotion, discriminatory discharge, and unlawful

retaliation based on her sex and pregnancy. IBM moves for summary judgment dismissing Lee's claims. Lee opposes the motion; however, Lee states in her response that she "has decided to voluntarily abandon her claims for discriminatory discharge and unlawful retaliation under Title VII and the TCHRA." P. Resp. (ECF No. 30) at 1. Accordingly, the court need not reach these grounds of IBM's motion, and Lee's claims for discriminatory discharge and unlawful retaliation under both Title VII and the TCHRA are dismissed. Only her claims for demotion based on her sex and pregnancy, in violation of Title VII the TCHRA, remain for consideration.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp. 2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sex discrimination includes "discrimination because of pregnancy." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). The law governing claims under the TCHRA and Title VII is "identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

To prevail on her discrimination claims, Lee must present direct or circumstantial evidence that her sex was a motivating factor for IBM's alleged adverse employment action. *See, e.g.*, *Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004)). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA*, Inc., 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in [the adverse action], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. Lee does not specifically reference any direct evidence of discrimination in her motion or complaint. Thus the court holds that she is relying on circumstantial evidence to prove intentional discrimination.

IV

Because Lee is relying on circumstantial evidence to support her discrimination claims, they are properly analyzed under the *McDonnell Douglas* burden-shifting framework. *See Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam). The *McDonnell Douglas* framework consists of three stages.

First, Lee must establish a prima facie case of discrimination, which "creates a presumption that [IBM] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Lee must show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Santos v. Wincor Nixdorf, Inc.*, 778 Fed. Appx. 300, 302 (5th Cir. 2019) (per curiam) (quoting *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018)).

Second, if Lee establishes a prima facie case, the burden shifts to IBM to articulate a legitimate, nondiscriminatory reason for the employment action taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). IBM's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*, *West*, 330 F.3d at 385.

Third, if IBM meets its production burden, Lee may prove intentional discrimination

by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see also Benitez v. Heartland Hotel Corp.*, 2011 WL 13228411, at *3 (N.D. Tex. June 14, 2011) (Furgeson, J.) (sex discrimination case). Under the pretext alternative, she must "offer sufficient evidence to create a genuine issue of material fact . . . that [IBM's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted). Under the mixed-motives alternative, she must offer sufficient evidence to create a genuine issue of material fact "that [IBM's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Lee's] protected characteristic[.]" *Id.* (citation and internal quotation marks omitted). "If the employee proves the unlawful reason was a motivating factor, the employer must demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." *Rachid*, 376 F.3d at 309-10 (5th Cir. 2004).

## V

IBM contends that Lee cannot establish a prima facie case of discrimination because her redeployment to Red Hat was not a demotion and thus does not constitute an adverse employment action. Because Lee's case fails at the pretext stage, the court will assume *arguendo* that Lee has made a prima facie showing of sex discrimination based on her redeployment. *See, e.g.*, *Clemmer v. Irving Indep. Sch. Dist.*, 2018 WL 1407288, at *3 (N.D. Tex. Mar. 21, 2018) (Fitzwater, J.).

VI

The burden therefore shifts to IBM to produce evidence of a legitimate, nondiscriminatory reason for transferring Lee.

IBM has proffered evidence that Lee was redeployed because it needed to move some employees to "other organizations within IBM that needed more support." D. Br. (ECF No. 21) at 20. IBM contends that the declining revenues of the Security ecosystem "necessitated shifts to other organizations," and that other areas of the business needed specific skills, such as Red Hat. *Id.*

The elimination of an employee's position as a result of a reorganization is a legitimate, nondiscriminatory reason for terminating the employee. *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356-57 (5th Cir. 2007) (holding that the "major reorganization" of the "Corporate Credit Review department, which eliminated [the plaintiff's] position" constituted a "legitimate, non-discriminatory reason for his termination"); *see also Cherry v. CCA Props. of Am. Liab. Corp.*, 438 Fed. Appx. 348, 352 (5th Cir. 2011) (per curiam) ("This court has previously recognized that a reduction in force is a legitimate, non-discriminatory reason for termination."). There is no reason why this principle should not also apply when an employee is transferred due to a company's reorganization of one of its departments. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 652 (7th Cir. 2001) (holding that a reorganization was a "legitimate, non-discriminatory reason for transferring [the plaintiff]" out of her previous role). Accordingly, the court holds that IBM has met its burden of production.

VII

A

Because IBM has met its burden of producing a legitimate, nondiscriminatory reason for the adverse employment action, "the burden shifts back to [Lee] to make an ultimate showing of intentional discrimination." *Campbell v. Zayo Grp.*, LLC, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015) (Fitzwater, J.) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)). Lee must (1) present sufficient evidence for a reasonable jury to find that the legitimate, nondiscriminatory reason proffered by IBM "[is] not its true reason[], but [was] a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253), or (2) offer sufficient evidence to create a genuine issue of material fact "that [IBM's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Lee's] protected characteristic[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted).

Lee's pretext argument rests principally on three assertions: (1) the relevant employees knew that Lee was female and pregnant before deciding to transfer her; (2) only female employees from Krull's team were redeployed; and (3) inconsistencies in IBM's stated rationale for Lee's transfer demonstrate that its proffered reason was pretextual.

B

Lee maintains that the relevant employees knew that she was female and pregnant before deciding to transfer her. "Although the temporal proximity between the employer learning of the plaintiff's pregnancy and her [demotion] may support a plaintiff's claim of

pretext, such evidence—without more—is insufficient." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016). Even if the court assumes *arguendo* that Kady was aware of Lee's pregnancy, as will be discussed below, the purported inconsistencies identified by Lee are insufficient to create a genuine dispute of material fact that the reason for Lee's transfer was pretextual.

C

Lee also maintains that IBM's decision to remove only women from Krull's team indicates that its actions were pretextual. But this, too, is insufficient to establish pretext. *See King v. W.W. Grainger Inc.*, 502 Fed. Appx. 360, 362 (5th Cir. 2012) (per curiam) ("Even if it is true that some male employees were fired while two female employees were retained, this evidence by itself is insufficient to prove pretext for intentional discrimination."). Moreover, one of the other employees redeployed from the Security ecosystem was male. And of the 104 employees subject to the companywide redeployment, approximately 75% were male and 25% were female.

D

Lee also relies on inconsistencies that she maintains are found in IBM's stated rationale for Lee's transfer.

A "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. And "[a] court may infer pretext where a defendant has provided inconsistent or conflicting explanation for its

conduct." *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) (citing *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 120 (5th Cir. 2003)).

Lee identifies two key inconsistencies.[4] First, she maintains that Krull initially told her that the decision to redeploy her was an HR decision, and that she was told later by HR that it was a management decision. Second, Lee contends that her CDW role, despite IBM's assertions to the contrary, was "not eliminated" but was "backfilled"—undermining IBM's contentions that downsizing was required and that head count was reduced. P. Resp. (ECF No. 31) at 42.

The first inconsistency is minor and would not enable a reasonable trier of fact to find that IBM's stated reason for transferring Lee is a pretext for sex discrimination. *See, e.g.*, *Fields v. Wal-Mart Stores, Inc.*, 2021 WL 1720212, at *7 (N.D. Tex. Apr. 30, 2021) (Fitzwater, J.) (citing *Schell v. Companion Data Servs., LLC*, 2019 WL 4536175, at *9 (N.D. Tex. Sept. 19, 2019) (Fitzwater, J.)). IBM has consistently maintained that the decision-maker for Lee's redeployment was Kady. Aside from Lee herself inferring that it would be "highly unlikely" that Kady would "get involved in . . . day-to-day personnel matters," Lee presents no evidence to dispute this fact. D. App. (ECF No. 22) at 37. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat

[4]Lee also contends that, although IBM asserts that Kady was the ultimate decision-maker—with Krull and Lisle being consulted—both Krull and Lisle testified they were not. This is also a minor inconsistency that would not enable a reasonable trier of fact to find that IBM's stated reason for transferring Lee is pretextual. Krull's and Lisle's respective explanations for the redeployment are consistent with IBM's.

a motion for summary judgment." *Brown v. City of Houston, Texas*, 377 F.3d 539, 541 (5th Cir. 2003). Moreover, Lee fails to explain how this inconsistency would undermine IBM's stated reason for her redeployment—that the decision was made because of "declining revenue within the IBM Security brand," D. App. (ECF No. 22) at 81, necessitating that IBM "mov[e] resources [to] where [it] really needed them." *id.* at 92. Accordingly, this inconsistency is insufficient to establish that IBM's stated reason is pretextual.

Lee's second alleged inconsistency directly relates to IBM's rationale for her redeployment. In essence, Lee contends that the CDW role was not eliminated, but was instead backfilled by Meyer—who was in a higher pay band than Lee. Taken together, Lee asserts that IBM's purported justification for transferring her—needing to reduce headcount due to declining revenue—must be false because another employee who was paid more than she took on the role.

The summary judgment evidence would not enable a reasonable trier of fact to find that IBM's conduct was inconsistent with its legitimate, nondiscriminatory reason for transferring Lee. The summary judgment evidence shows that IBM decided that the Security ecosystem team would reduce head count as part of a consolidation effort. As detailed above, at least two members of Krull's team (including Lee) and two others within the Security ecosystem as a whole were affected. As Lisle testified, the Security ecosystem team would "do the same [work] but with less individuals," with the existing work being "spread across the individuals that were remaining on the team." D. App. (ECF No. 22) at 96. Then,

although it had been determined that Lee would be redeployed,[5] CDW still remained a client of IBM. IBM determined that Krull would temporarily cover CDW because, despite the fact that "head count was being eliminated . . . [t]here was still a need for coverage." *Id.* at 81. Seeking an employee to permanently cover CDW given the reduced head count, IBM ultimately elected to move Meyer to Krull's team to cover CDW. According to IBM, Meyer was a natural candidate because he was already "[i]n the Security ecosystem," and had also previously worked directly for CDW. *Id.*[6]

At bottom, the record shows that IBM merely reasoned that one of its organizations needed to reduce head count, so it transferred an employee covering a client (along with three other employees) to another division that it felt would be a good fit. But the client remained,

---

[5]In Lee's response brief, she asserts that IBM cannot tell a "[c]onsistent [s]tory" about when it officially reassigned Lee, pointing to several job history records and Workday Job History. P. Resp. (ECF No. 31) at 17-19. The significance of these varying dates, with respect to establishing pretext, is unclear. As described in Barbara Brijacek's declaration, IBM produced Exhibit F-5, the "Workforce Capacity Planning Sheet for the Business Driven Mobility project completed by Jennifer Kady." D. App. (ECF No. 22) at 105. This document indicates that Lee was selected for redeployment on June 16, 2023 by Kady. Then, in an email sent to Lisle on August 4, 2023, he was informed that Lee would be redeployed. *Id.* at 128. This is consistent with Krull's testimony that the reason Lee was not considered to cover CDW at that point was because "while she still technically reported to [Krull] . . . her head count . . . [was] not available for deployment on [his] team . . . [b]ecause Ms. Lee's head count was moved off of [his] team in the August piece to the Red Hat team." *Id.* at 81.

[6]Further undermining the inference that IBM's decision to replace Lee with Meyer is evidence of pretext, Meyer was notified just eight to nine months after assuming Lee's role that he was the subject of a "resource action." D. App. (ECF No. 22) at 67. He was, in effect, "laid off" from IBM unless he could independently find another position within the company. *Id.* The same happened to three other employees on Krull's team in 2024. *Id.* at 84.

and it needed coverage. The fact that IBM ultimately decided to have an existing employee already within the same organization cover that client does not "create a genuine issue of material fact . . . that [IBM's] reason [for transferring Lee] is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted).

VIII

Alternatively, Lee asserts that her sex and pregnancy were motivating factors for her redeployment.

"Even when an employee fails to show that [her] employer's stated reason for [the adverse employment action] . . . is a pretext" for discrimination, the employee "can still survive summary judgment" by showing that the protected characteristic was merely a "motivating factor" in her employer's decision. *Mackey v. Enventives, L.L.C.*, 802 Fed. Appx. 835, 838 (5th Cir. 2020) (per curiam). Lee advances nearly identical arguments to those discussed above.[7] The court concludes that Lee's mixed motives-based reasons fail for the same reasons as her pretext-based reasons. *See Mackey v. Enventives, L.L.C.*, 802 F. Appx. 835, 838 (5th Cir. 2020). Taken together, Lee's strong performance, the redeployment of another woman, her sex and pregnancy at the time of the decision, minor inconsistencies in what was communicated to her, and the eventual assignment of her client to a male do not create a genuine issue of material fact as to whether her sex or pregnancy was a motivating

[7]P. Resp. (ECF No. 31) at 46-47.

factor in the decision to transfer her.

Separately, Lee contends that Krull and Lisle's deposition testimony demonstrates that IBM "manufacture[d]" new reasons for Lee's presumed demotion. P. Resp. (ECF No. 31) at 20. Lee asserts that Krull and Lisle lied in testifying that Lee wanted to leave the CDW role because of the travel (and in Lisle's case, "because of the travel and her pregnancy"). *Id.* Lee posits that this indicates her "pregnancy played *a* role in their decision to demote her out of the CDW role." *Id.*

This assertion relies on an imprecise characterization of both Krull's and Lisle's testimony. First, Krull merely testified that, at various points, Lee told him "[s]he did not want to travel," including "before her pregnancy." P. App. Vol. 1 (ECF No. 28) at 453. Lee presents no evidence that these purported comments actually contributed to Kady's decision to redeploy Lee. Even if they did, it would not enable a reasonable trier of fact to find that Lee's sex or pregnancy was a motivating factor in IBM's decision to redeploy her.

Second, in Lisle's case, he was directly asked at his deposition how he learned of Lee's pregnancy. He responded that it "came up" when he was having a conversation with her about her role with CDW. *Id.* at 518. Lisle testified that "[s]he talked about her pregnancy, and CDW took a lot of travel, so she was interested in a potential change that didn't require her to travel on a regular basis." *Id.* Aside from showing that Lisle believed that Lee would welcome the new role, there is no evidence that these comments played any role in IBM's actual decision to redeploy Lee or that Kady was even aware of them. And even if they were, Lee's statement that she was pregnant would not be sufficient to enable

a reasonable trier of fact to find that her pregnancy was a motivating factor in IBM's decision to redeploy her.

* * *

For the reasons stated, the court grants IBM's motion for summary judgment on Lee's claims for Title VII and TCHRA discriminatory demotion, discriminatory discharge, and retaliation, and enters judgment in favor of IBM dismissing the lawsuit with prejudice.

**SO ORDERED**.

September 9, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE